Small v. Field.

---

SMALL v. FIELD ; GREENE *et al.*, *Appellants.*

1. **Deed:** SUFFICIENCY OF ACKNOWLEDGMENT. The acknowledgment of a deed to land in Missouri taken before the deputy clerk of a territorial district court is sufficient, notwithstanding the statutes of the United States, providing for the appointment of the clerk of such court, make no provision for a deputy (R. S. U. S. 1878, sec. 1871), though deputy clerks of territorial courts are expressly spoken of elsewhere in the statutes. ( R. S. U. S., sec. 748.)

2. **Offices and Officers :** DEPUTY : CLERK OF COURT. A ministerial officer may make a deputy whenever nothing is required but superintendency in office.

3. ——— : ——— : ———. The office of clerk of a court seems to be one which, from its nature and constitution, implies the power or right to execute it by deputy.

4. ——— : ———. The rule is general that a deputy may do every act which his principal might do, and it will be presumed that he acted with rightful authority

Small v. Field.

5. **Devise:** SEPARATE ESTATE, CONVEYANCE OF. A devise to a married woman "for the sole use of herself and children," creates in her a separate estate, the equitable fee to which she may convey, by an unacknowledged deed, the same as though she were a *feme sole.*

6. **Wills:** CONSTRUCTION : EXTRANEOUS EVIDENCE. Extraneous evidence is not admissible to vary, explain, contradict or control the terms of a will, but it may be received to show the circumstances surrounding the testator, in order that the court may be placed, as far as may be, in his situation, to determine both the subjects and objects of his bounty.

7. —— : ——. In construing a will the meaning of the testator, if possible, must govern ; single words and clauses will not be construed alone, but the whole instrument, in its general scope and design, will be taken into consideration, together with the surrounding circumstances, when properly admissible, in order that the intention of the testator may be determined. (R. S. 1889, sec. 8916.)

8. —— : ——. In giving a proper and practical construction to a will, technical rules must yield to the obvious intention of the testator gathered from all parts of the instrument and as illustrated by evidence of his situation and surroundings.

9. —— : ——. In construing wills, courts must not lose sight of the fact that, unlike contracts, they spring from the better part of human nature, and, in order to be construed in a natural manner, they must be construed in a way that best accords with what the heart of the testator would dictate, if left unfettered by technical rules.

10. —— : ——. Where a mother, under great legal and moral obligations to her daughter, bequeathed to her by holographic will, "all the rest of" her "real and personal estate for the *sole* use of herself and children," subject to a legacy of $300, "to be paid out of the amount willed to my daughter," the daughter will take the fee in the land devised.

11. —— : ——. The words, "for the sole use of herself and children," will not create a trust, nor make the daughter and her children tenants in common, nor vest in the children a remainder after their mother's death.

12. —— : —— : TRUST. Such words, as for the "sole use of herself and children," used in a will, will frequently be regarded as merely indicative of the motive of the gift to the devisee, and will not be regarded as expressive of an intention to create a trust.

13. ——— : ———. Words tending to imply a trust will be *held* not to create one, if looking at the whole context of the will, and all the circumstances together, the probabilities are against implying a trust, but favor the theory that the words were merely employed to express the motive prompting the testator's gift.

14. ——— : ———. An estate in fee, devised by the terms of a will, cannot be impaired, cut down or qualified, except by words as affirmatively strong as those employed in conveying it. ( R. S. 1879, sec. 4004.)

15. ——— : ———. Where a testator interprets a particular clause in his will, the courts, when called upon to construe it, will follow that interpretation.

*Appeal from Jackson Circuit Court.*—Hon. J. H. Slover, Judge.

Affirmed.

*James O. Broadhead* and *Warner, Dean & Hagerman* for appellants.

( 1 )   The devise to Kate Greene was a devise to her in trust for herself and children.   Perry on Trusts [ 3 Ed.] pp. 18, 520, 521 ; *Smith v. Bowen*, 35 N. Y. 83 ; Pomeroy's Eq. Jur., sec. 1012 ; *Woods v. Woods*, 1 My. & Cr. 401 ; *Berry v. Bryant*, 2 Dr. & S. M. 1 ; *Castle v. Castle*, 1 DeG. & J. 352 ; *Byne v. Blackburn*, 26 Beav. 41 ; *Carr v. Living*, 28 Beav. 644 ; Redfield on Wills [Ed. 1874] p. 702 ; *Loring v. Loring*, 100 Mass. 340 ; *White v. White*, 30 Vt. 338 ; *Blouin v. Phaneuf*, 16 Atl. Rep. 540.   It was such a trust as was executed by the statute of uses and trusts of Missouri.   R. S. 1879, sec. 3938 ; Perry on Trusts [ 3 Ed.] p. 521.   Under the devise Kate Greene and her children took as tenants in common.   2 Jarman on Wills [ 5 Am. Ed.] p. 690 ; 2 Washburn on Real Prop., p. 654 ; *Wild's Case*, 6 Coke, 17 ; *Buffer v. Bradford*, 2 Atk. 220 ; *Annable v. Patch*, 3 Pick. 360 ; *Hockstedler v. Hockstedler*, 7 W. Rep. ( Sup. Ct. Ind.) 25 ; *Shiman v. Mann*, 99 Ind. 190 ; *Bailey v. Sawyer*, 6 W. Rep. 556 ; *Thornhill v. Hale*,

Small v. Field.

2 Clark & F. 22; *Collins v. Collins*, 40 Ohio St. 333; *Hamilton v. Pitcher*, 53 Mo. 334; *Allen v. Claybrook*, 58 Mo. 124; *Hall v. Stephens*, 65 Mo. 672; *Allen v. Hoyt*, 5 Metc. 324; *Newill v. Newill*, L. R. 7 Ch. App. 253; *Dewitt v. Dewitt*, 11 Sim. 41; *Crockett v. Crockett*, 2 Phillips, 553; Schouler on Wills, sec. 474; *White v. Allen*, 81 Ind. 244; *Jackson v. Nelson*, 17 N. E. Rep. (Mass.); *Guthrie's Appeal*, 37 Penn. St. 915; *Christy v. Phyfe*, 19 N. Y. 344, 354. (2) If the clause of the will in question did not devise the real estate to Kate Greene as trustee, for the sole use of herself and children, or to Kate Greene and her children as tenants in common, it certainly created in her only a life-estate, with remainder over to her children. *Borden v. Kingsbury*, 2 Root (Conn.) 39; *Josey v. White*, 28 Ga. 265; *Goss v. Eberhart*, 29 Ga. 545; *Carr v. Estill*, 16 B. Mon. (Ky.) 309; *Giles v. Little*, 104 U. S. 292; *Green v. Hewitt*, 12 Cent. Law Jour. 58; *Smith v. Bell*, 6 Peters, 68; *Kinney v. Matthews*, 69 Mo. 520; *Koenig v. Kraft*, 7 S. W. Rep. 372; *Foster v. Shreve*, 6 Bush. 519; *Crockett v. Crockett*, 2 Ohio, 180; *French v. French*, 11 Sim. 256; *In re Harris*, 7 Exch. 344; *Baker v. Nall*, 59 Mo. 265; *Phillips v. Laforge*, 89 Mo. 72; *Affolter v. May*, 8 Atl. Rep. 20; *Mercier v. Land Co.*, 72 Mo. 494. (3) By the well-settled rules of law governing executory devises, the subsequently born children of Kate Greene took under the devise in question. The devise, at the death of the testator, vested in Kate Greene and her then living children a qualified estate, which afterward opened and let in the after-born children. 4 Kent, 205; *Annable v. Patch*, 3 Pick. 360; *Aubuchon v. Bender*, 44 Mo. 556; *Emerson v. Whittlesey*, 55 Mo. 258; *Delassus v. Gatewood*, 71 Mo. 379; *Jones v. Waters*, 17 Mo. 589; *Allen v. Crosby*, Kansas City Law Rep., June 22, 1888, p. 1; *Dole v. Keyes*, 3 N. E. Rep. (Mass.) 327. (4) Testimony cannot be admitted to contradict, add to or explain the contents of a will. 1 Jarman on Wills [5 Am. Ed.] p. 708, *et seq.* (5) The deed of

Kate Greene to Vogler is void from want of power in the deputy clerk of Washington Territory to take the acknowledgment.    R. S. 1879, secs. 676 to 681; R. S. U. S. 1878, secs. 1870, 1871.    (6)    As to the general rule of construction of wills, see Jarman on Wills [5 Am. Ed.] 699, *et seq.*, and especially rule 16, page 707.

*Wash.* Adams and *Gage,* Ladd & *Small* for respondents.

(1)    The certificate of acknowledgment of O. D. Greene and Kate Greene to deed from them to Vogler, respondents' grantor, is sufficient.    *Hope v. Sawyer,* 14 Ill. 254; *Greason v. Davis,* 9 Ia. 219–224; *Tuten v. Grazen,* 18 Fla. 751; *United States v. Peralta,* 19 How. (U. S.) 343; *Musser v. Johnson,* 42 Mo. 74; *Lynch v. Livingston,* 8 Barb. (N. Y.) 483; *Cook v. Knott,* 28 Tex. 85; *Abrams v. Eswin* 9 Ia. 90; *Springer v. McSpadden,* 49 Mo. 299; 1 Devlin on Deeds, secs. 473–5, and cases cited.    (2)    There is nothing in the statutes of the United States cited by appellants that would prevent the legislature of Washington Territory from passing a law authorizing a clerk to act by deputy.    R. S. U. S., secs. 1851, 1933, 1917, 1872 and 748.    (3)    The objection is a mistake on its face.    The acknowledgment purports to have been taken before the clerk himself whose name was signed by deputy, and he was a territorial deputy clerk.    Appellants are confined in this court to the particular objection made below.    (4) A married woman can convey her separate estate as if she were single.    No acknowledgment at all was necessary.    *Turner v. Shaw,* 96 Mo. 22; *Morrison v. Thistle,* 67 Mo. 599; *Beal v. Morgner,* 46 Mo. 50; *Ex Parte Ray,* 1 Mad. 207; *Adamson v. Armitage,* 19 Ves. 416; *Smith v. Wells,* 7 Met. (Mass.) 243; *Ayer v. Ayer,* 16 Pick. 331; *Jamison v. Brady,* 6 S. & R. 466.    (5)    "In construing a will, the object is to reach the intention of the testator, which is to be gathered, not from single

Small v. Field.

words nor single passages, but from a consideration of the whole instrument and general design and scope of it." *Suydam v. Thayer*, 94 Mo. 55 ; *Reinders v. Koppelman*, 94 Mo. 343 ; *Munroe v. Collins*, 95 Mo. 37 ; *Russell v. Eubanks*, 84 Mo. 86 ; *Allison v. Cheney*, 63 Mo. 283. (6) And under the statute law of this state it is the true, *i. e.*, the real, the actual, intention which must be ascertained and followed, unless that is contrary to public policy. *Mead v. Jennings*, 46 Mo. 91 ; *Suydam v. Thayer*, 94 Mo. 55. (7) "In construing wills, the familiar rule prevails that they are to be construed as a whole ; liberally construed." "What is the central idea of the testator?" is the question. *Partridge v. Cavender*, 96 Mo. 456 ; *Hatcher v. Hatcher*, 80 Va. 175 ; *Phillips v. Davis*, 92 N. Y. 199 ; *Homerton v. Henderson*, 88 N. C. 597 ; *Findley v. King*, 3 Pet. 377. (8) Especially should technicalities be avoided in construing a will written by a testator himself, who is unskilled in the use of the technical language of the law of real property. *Stinson v. Day*, 1 Rob. 443 ; *Parks v. Parks*, 9 Paige Ch. 116, and note ; *Brownfield v. Wilson*, 78 Ill. 467 ; *Kauffman v. Breckenridge*, 5 W. Rep. 148 ; *Rivenett v. Bourquin*, 53 Mich. 18 *Delph v. Delph*, 2 Bush, 13 ; *Lytle v. Beveredge*, 58 N. Y. 592 ; *Roy v. Rowe*, 90 Ind. 54 ; *McKee's Appeal*, 104 Pa. St. 572 ; *Weeks v. Cornwall*, 6 Cent. Rep. 779. (9) "It is well settled that, in construing a will, the intention of the testator is to be ascertained if possible, and that, in looking for the intention, the surrounding circumstances may be taken into consideration." *Noe v. Kern*, 93 Mo. 373 ; *Suydam v. Thayer*, 94 Mo. 55 ; *Reinders v. Koppelman*, 94 Mo. 343 ; *Munroe v. Collins*, 95 Mo. 37 ; *Henry v. Henry*, 81 Ky. 342 ; *Blake v. Hawkins*, 98 U. S. 234 ; *Hunt v. White*, 24 Tex. 652 ; *Ebert v. Ebert*, 42 Mich. 404. (10) The words, "sole use of herself and children," at the end of the residuary clause, were not intended to impair in any degree the estate which had just been vested in Mrs.

Greene in such strong terms; but to strengthen her interest in it, and increase its value to her, by excluding her husband from all rights and control, and to indicate, at the same time, the motive or reason for vesting the property in Mrs. Greene, as her separate estate, which was to fully enable her to use and appropriate it in her unfettered discretion as she might think best for herself and children. The word sole, being underscored by this testatrix herself, shows that the paramount, central idea in this phrase was to exclude the husband and not to include the children. *Mauzy v. Mauzy*, 79 Va. 537; *Bain v. Buff*, 76 Va. 371; *Penn v. Whitehead*, 18 Gratt. 514; *Whitridge v. Williams*, 17 Atl. Rep. 938; *Moore v. Simmons*, 2 Head, 546; *Landon v. Moore*, 45 Conn. 422; *Claggett v. Hall*, 9 Gill & J. 81-93; *Brumfield v. Drook*, 101 Ind. 109; *Lennen v. Craig*, 95 Ind. 167; *Mackett v. Mackett*, 14 Eq. Cases; *English v. Behle*, 32 Mo. 186; *Blue v. Peneston*, 24 Mo. 240. (11) The words impairing her estate must be as strong as the words giving it to her. R. S. 1879, sec. 4004; *Roseboom v. Roseboom*, 81 N. Y. 356; *Clark v. Luepp*, 88 N. Y. 328; *Williams v. Bradley*, 3 Allen, 282; *Barksdale v. White*, 28 Gratt. 1; *White v. White*, 52 Conn. 520; *Collins v. Collins*, 40 Ohio St.; *Pue v. Pue*, 1 Md. Ch. 382; *Thornhill v. Hall*, 2 Clark & Finn. 36; *How v. Barber*, 7 S. E. Rep. 819; *Rowland v. Rowland*, 6 S. E. Rep. 904-5. (12) So the law is, that if the testator himself interprets a given clause, that interpretation will be adopted by the courts as conclusively showing his intention. *Reinders v. Koppelman*, 94 Mo. 343; *Wallace v. Dold*, 2 Leigh, 258; *Jones v. Jones*, 2 Beasley (N. J.) 237; *Brown v. Merrill*, 131 Mass. 325.

SHERWOOD, J.—This proceeding for the partition of lots 490, 491 and 492, in block 37, McGee's addition to the City of Kansas, necessitates the construction of the will of Julia A. Rich; and, upon this construction of

the will, the point must be determined whether Mrs. Kate Greene, the daughter of the testatrix, took an estate in fee.

The will is as follows :

" In the name of God, Amen. I, Julia A. Rich, of the county of Leavenworth, in the state of Kansas, being of sound mind, do make and declare this to be my last will and testament.

" *First.* All my just debts and funeral expenses to be fully paid.

" *Second.* I will and bequeath to my beloved daughter, Kate Greene, wife of Oliver D. Greene, all my personal effects, including silver, bedding, jewelry and clothing, at her death to be equally divided between her two daughters, Mary and Kate Greene, and my adopted granddaughter, Medora Annie Rich.

" *Third.* I will and bequeath to my son, James W. Rich, my house, now occupied by him and his family, and the one hundred and thirty acres of land, more or less, upon which it stands, and which I hold a mortgage upon during his natural life ; at his death property to be sold and the proceeds invested for the benefit of my adopted daughter, Medora Annie Rich, to clothe and educate her ; also, the sum of $350 a year, to be paid him in money, semi-annually ; at his death it goes to his daughter, Medora Annie Rich.

" *Fourth.* In consideration of the deep affection I have for my beloved daughter, Kate Greene, and her tender love and sympathy for me in all my trials and troubles in this life, I will and bequeath her all the rest of my money, notes, real and personal estate, for the sole use of herself and children.

" *Fifth.* Should my brother, Thomas H. Wilson, survive me, I will and bequeath him $300, in consideration of his kindness and attention to me during the last eight months of my failing health. This money to be paid him from the amount willed my daughter, Kate Greene, and which I beg she will see that he gets.

" *Sixth.*  In case of the death of Medora Annie Rich, I will and bequeath her portion to my daughter, Kate Greene, deducting $300 to be paid Julia Eliza Rich, youngest daughter of James W. Rich.

" Executed at Salt Creek, Leavenworth county, state of Kansas, June 30, 1874, in the presence of witnesses whose names are hereunto affixed.

" JULIA A. RICH.

" Witnesses :

" RICHARD W. MOSES,
" RICHARD MOSES."

On the hearing of the cause, the following facts were shown in evidence :

Julia A. Rich was the widow of Hiram Rich, and lived, at the time of her death ( October 11, 1875 ), in Leavenworth county, Kansas, and at that time and the time she made her will, to-wit, June 30, 1874, she had two children living, James W. Rich and Mrs. Kate Greene, the wife of Oliver D. Greene, an officer in the United States army.  Hiram Rich died intestate in the year 1862, at Leavenworth, leaving his widow, Julia A. Rich, his three children, Hiram Rich, Jr., James W. Rich and Mrs. Kate Greene and a grandson, Bradley Rich, son of Lucius Rich, deceased, as his only heirs at law, and under the statutes of Kansas one-half of the property, real and personal, of said Hiram Rich, deceased, descended to his widow, and the other half to his children and said grandson, in equal parts.  In 1863, Julia A. Rich was appointed administratrix of the estate of Hiram Rich, deceased.  The property left by said Hiram Rich consisted of a farm of about two hundred and seventy-six acres, located in Salt Creek valley, in Leavenworth county, and personal property of the appraised value of $56,083.32.  Julia A. Rich qualified as such administratrix and gave bond in the sum of $114,000.  On July 22, 1864, she made final settlement in the probate court of Leavenworth county, and showed a balance due the estate in her hands of $23,892.29, after

the payment of all debts, and besides reported a large amount of uncollected assets, to-wit, about $20,000 which the year before had been appraised at par, all of which the court ordered her to distribute among the heirs of Hiram Rich.

Hiram Rich, Jr., and Bradley Rich both died without issue and intestate before the decease of said Julia A. Rich, and before she made her will. Mrs. Kate Greene never received from her mother any part of the estate of her father, real or personal, to which she was entitled, and never asked her mother to make a settle- for her interest or any part thereof, but allowed her entire portion to remain in her mother's possession, and under her control for her support, as long as she lived, but James W. Rich exacted, and was paid by his mother, all that was coming to him from his father's estate, and besides, at the time she made her will, had become indebted to her in the sum of about (principal and interest) $4,000 for which she had a mortgage upon his house and farm. Mrs. Greene, testifying in this case, said: "My mother had both family afflictions and troubles, and financial losses, in administering her husband's estate. Those were the troubles to which she referred in clause 4 of her will."

At the time of making her will, and at the time of her death, Mrs. Julia A. Rich owned the following property:

The Salt Creek farm of two hundred and seventy-six acres, which had formerly belonged to her husband, except about forty acres, the interest which had descended to Mrs. Kate Greene, which had never been deeded to her, but which she had been permitted, by Mrs. Greene, to remain in possession and control of, as before stated, which was worth, at the time she made her will, according to the evidence of her administrator and the witnesses to her will, from $25 to $30 an acre, and for which she offered to take $35 per acre in the

Small v. Field.

spring of 1874, making the value of her interest in the farm at that time about $7,000 or $8,000. These three lots in Kansas City, which, with the foundry then upon them, and machinery contained in it, were then worth from $2,500 to $3,000, but were incumbered with state, county and city taxes for the years 1868, 1869, 1871, 1872, 1873 and 1874, to the amount of $1,143, exclusive of interest and penalties, and with penalties and interest to probably about $2,000. She had, for several years, derived no income from this property in Kansas City, the foundry not being in operation, but in an abandoned condition. Thirty-three shares of stock in the Merchants' National Bank of Little Rock, Arkansas, worth, at that time, about $1,650. A promissory note against one Whitney for $4,000 ; two notes against her son, James W. Rich, one for $2,000, and one for $850, which, with interest due for several years, amounted to about $4,000, secured by a mortgage on his house and farm.

At the time of her death she was indebted in the sum of about $800. The foregoing was her total estate and its condition ; it was worth, at the time she wrote her will in 1874, and at the time of her death in 1875, hardly $18,000. For several years before her death she had rented her Salt Creek farm for $300 or $400 per annum, and had no other income except from the interest paid by Whitney and probably some dividends on her bank stock. She made her home with her son and his family, but visited her daughter Kate Greene, from time to time. In 1874, James W. Rich was forty-five years of age, and his wife about twenty-eight ; he had three children, Medora Ann, a child by his first wife, whom the testatrix refers to in her will as her adopted daughter, then aged about ten years ; Julia Eliza, aged about four years, and a son aged two years.

James W. Rich had no property to speak of except his house and farm, which were mortgaged to his mother

for about their full value. At that time Mrs. Kate Greene was thirty-four years of age and her husband, forty-one. She then had four children living, Mary, Kate, Nathaniel and Henry, aged respectively eleven, ten, four and two years. Two of her children had died previous to that time. Subsequent to her mother's death two more children were born to Mrs. Kate Greene, Oliver D., born in May, 1876, and a daughter, Augusta C., born in 1879, but who died before this suit was instituted, but after her conveyance to respondent's grantor.

From the time of his marriage in 1859 up to the time Mrs. Julia A. Rich made her will, Oliver D. Greene was an officer in the army, and had accumulated little, if any, property, and although he owned a home of his own while stationed at St. Paul, he had probably lost it by misfortune, or otherwise, shortly before Mrs. Rich made her will. At least, Mrs. Greene testifies that their home had been sold, and that at the time her mother made her will her husband had no property or income aside from his salary, and although her husband's testimony is not clear, because of his refusal to answer questions, it is substantially to the same effect.

Surrounded by the foregoing circumstances, Mrs. Julia A. Rich wrote her own will, and underscored the word "*sole*" in the fourth clause therein with her own hand, and on June 30, 1874, executed the same on her farm at the house of her tenant, in his and his father's presence as witnesses, and no other person was then present.

Events subsequent to death of testatrix in connection with the administration of her estate: In 1876, letters of administration were taken out in the probate court of Leavenworth county, Kansas, upon the estate of Julia A. Rich by George P. Allen, upon the petition of James W. Rich, who declined to serve as administrator because he was "inexperienced in such matters," and because George P. Allen was familiar with his

mother's affairs and had been her "adviser" in her life-time. In the final distribution of Mrs. Julia A. Rich's estate, Mrs. Kate Greene claimed to be the sole residu-ary legatee and devisee under her mother's will, and was recognized as such by all parties concerned, and also by the probate and district court, in which latter court the administrator was ordered to turn over all property and assets in his hands to her, "for her own use, and benefit, and behoof forever," she executing a bond and mort-gage on the Salt Creek farm to secure the payment of her brother's annuity. In compliance with this order the administrator turned over to her the Whitney note, upon which there was a balance of $2,000 and interest still due, and the thirty-three shares of bank stock, and $322 in cash, and the title papers belonging to the estate of his mother. She had previously received from the administrator $100 in cash, and also $825 from John A. Moore, to whom she had sold the foundry building and machinery on the lots in question in 1876, who removed the same and left the naked lots incumbered with accu-mulated taxes and penalties exceeding their value.

The witnesses who testified for respondents to the foregoing facts were the appellants, Kate Greene and her husband, Oliver D. Greene, George P. Allen, administrator of the testatrix, and Richard W. Moses, the witness to her will. Appellants introduced no evidence in the case, and asked no questions.

By deed, dated September 2, 1879, appellants, Kate Greene and O. D. Greene, with whom were joined James W. Rich and Medora Rich, conveyed the lots in question to respondent's grantor, Jacob Vogler, with the statutory covenants of warranty, for a consideration of $100, "subject expressly to all tax liens and tax titles of whatsoever kind or character," the record of which deed was read in evidence, to which the appel-lants objected as follows: "We don't require the original, but we object because it is acknowledged

Small v. Field.

before the deputy United States clerk of the court, and not before the clerk of the court, and not by a person authorized by law to take acknowledgments."

Judge SLOVER, before whom the case was tried, rendered a decree in favor of respondents, which, among other things, recites that "the court finds and declares that, in and by said will, construed with reference to all its provisions, and the circumstances surrounding said testatrix at the time of the execution of said will shown in evidence, it was the intention of said Julia A. Rich, in the fourth clause of said will, to, and said clause did, vest the entire and absolute fee-simple title to the real estate, above described, in the defendant Kate Greene, the daughter of the testatrix, Julia A. Rich, for her sole and separate use, to the exclusion of her said husband, subject only to the debts of said testatrix and the annuity of James W. Rich, and after his death to Medora Annie Rich, and the legacy to Thomas H. Wilson mentioned in said testament. That said fourth clause of said will was not intended to and did not vest any estate, right, title or interest whatever in the children of said Kate Greene."

The acknowledgment of the deed to which reference has been made is in these words:

"COUNTY OF CLARK, 
"Washington Territory,  ss.
  "United States. 

"Be it remembered, that on this second day of September, A. D. 1879, O. D. Greene and Kate Greene, his wife, who are personally known to the undersigned clerk—district court Second Judicial District of Washington Territory—to be the persons whose names are subscribed to the within and foregoing deed as parties thereto, personally appeared before me and acknowledged that they executed and delivered the same as their voluntary act and deed for the uses and purposes therein contained. And the said Kate Greene, being by

me made acquainted with the contents of said deed, acknowledged, on an examination separate and apart from her said husband, that she executed the same freely and without compulsion or undue influence of her said husband.

"Given under my hand and official seal of said court the day and year aforesaid.

"[Seal.]          R. G. O'BRIEN,
                       "Clerk said Court.

"By G. McCONNELL,
     "Deputy at Van Couver."

I. Before discussing the question as to whether the court below properly construed the will of Julia A. Rich, a question preliminary to that must be determined, and that is the sufficiency of the certificate of acknowledgment taken in Washington Territory. So far as concerns the *form* of the certificate, it is unexceptionable, being made in the name of the clerk and signed by the deputy, and under the seal of the court. Such a certificate, if made in this state, would be unobjectionable, as shown by the case of *Springer v. McSpadden*, 49 Mo. 299.

But it is objected that the clerk had no power to *appoint a deputy ;* and that this is proved by sections 1871 and 1870 of the United States Revised Statutes, 1878, which provides that:

Section 1870: "The supreme court of each territory shall appoint its own clerk, who shall hold his office at the pleasure of the court for which he is appointed."

Section 1871: "Each judge of the supreme court of the respective territories shall designate and appoint one person as clerk of the district over which he presides, where one is not already appointed and shall designate and retain but one such clerk where more than one is already appointed."

And it is also said by the appealing defendants that no provision is anywhere to be found in those statutes

for the appointment of a deputy for a territorial district court. But at common law a ministerial officer had authority to appoint a deputy. Com. Dig.—Tit. Officer (D. I.); Am. & Eng. Cyclop. of Law—Tit. Deputy, 624. Thus, a sheriff, though his patent of office does not say he may execute his office *per se vel sufficientem deputatum suum*, yet he may make a deputy. 7 Bac. Ab.—Tit. Offices & Officers, 316 (L.).

The office of clerk of a court seems to be one which, from its nature and constitution, implies a power or right to execute it by deputy. Whenever nothing is required but superintendency in office a ministerial officer may make a deputy. 7 Bac. Abr. 316, 317,—Tit. Offices and Officers. And the rule is general that a deputy may do every act which his principal might do. Com. Dig. Officers, D. 3; *Confiscation Cases*, 20 Wall. 92.

It will not be contended that the person, who assumed to act as deputy in the present case, acted without rightful authority; every presumption of the law faces the other way. If necessary to uphold this certificate, we would presume that a law of the territorial legislature was in existence authorizing the appointment of a deputy clerk. And this not only on the grounds stated, but because section 1851, Revised Statutes, United States, provides that "the legislative power of every territory shall extend to all rightful subjects of legislation, not inconsistent with the constitution and laws of the United States," and there is nothing inconsistent between such a territorial statute, and the federal law already quoted, and because section 748, Revised Statutes, United States, expressly speaks of "*deputy clerks*" of territorial courts. In an early case in Tennessee, where the statutes gave no authority to appoint a deputy clerk, yet recognized deputy clerks by mentioning them, this was regarded as tantamount to a legislative sanction of their capability of being appointed, and of their legal capacity and qualifications to perform the duties of the office of their principals.

*Bonds v. State*, 17 Am. Dec. 795.　Moreover, the seal of the court being affixed to the certificate carries with it *prima facie* evidence that it was rightfully affixed, and throws the burden of overcoming the *prima facie* case thus made on the objectors to the sufficiency of the certificate.　*Musser v. Johnson*, 42 Mo. 74.　We, therefore, hold the certificate of acknowledgment sufficient.

II.　But it is quite immaterial whether or not that certificate is good, and for this reason :　In the creation of a separate estate in equity, neither technical terms, particular forms of expression nor any special collocation of words is necessary ; all that is requisite is that the purpose to create such an estate shall clearly appear.　2 Story Eq. Jur. [13 Ed.] secs. 1381, 1382 ; 1 Bishop Mar. Wom., sec. 825 ; *Morrison v. Thistle*, 67 Mo. 596.　In the present instance, the words "*for her sole use*," are the words usually employed, and are sufficiently indicative of the exclusive purpose which dictated their employment.　1 Washb. Real Prop. [5 Ed.] 342.　This being the case, the fact that Kate Greene signed the deed makes it good to pass the equitable fee without an acknowledgment, just as much so as if she had been a *feme sole ;* this was so ruled in *Turner v. Shaw*, 96 Mo. 22.

The court in that case held that the words, "*sole use*," were sufficient to create a separate estate in the *feme* even if they had been employed in a conveyance to her by a *stranger ;* but that, the deed being made by the husband to the wife, a separate estate was the necessary result, when if made by a stranger, "*absent the necessary words*," no separate estate would have been created.　The head note in that case, which has misled counsel for defendants, makes the court say that a deed from a *stranger* to the wife, employing the usual words, "sole use," *would not* create a separate estate.　A glance at paragraph 3 of the opinion will show the incorrectness of the head note.　Holding the deed, then, to be a valid one, from whatever standpoint it is viewed, we

pass to the consideration of the nature and extent of the estate conferred on Kate Greene by the will of her mother.

III.    Relative to the proper construction to be given the fourth clause of the will before us, the appealing defendants have three several and divergent theories, to-wit:

"*First.*   As willing and bequeathing said real estate to the defendant, Kate Greene, for the sole use of herself and children, and thereby the legal title to said real estate was vested in said Kate Greene, but her children were each entitled to equal shares with her in said real estate, which shares she held in trust for said children.

"*Second.*   Or the said will should be construed as devising said real estate to said Kate Greene and her children as tenants in common, share and share alike.

"*Third.*   Or the said will should be construed as conveying a life-estate in said real estate to said Kate Greene, with remainder over to her children."

And in their conclusion upon such variant theories, counsel insist that:

"*Fourth.*   In no event can the will be construed as conveying to said Kate Greene a fee-simple title to the whole of said real estate, as claimed by the plaintiff."

If counsel after such full research of the authorities, as is evident they have made in this cause, are still uncertain as to what the meaning of the testatrix was in employing the words of the fourth clause of her will, this will furnish a strong argument in favor of the admissibility of parol evidence to shed a light on that meaning.    For though it is settled that extraneous evidence is not admissible to vary, explain, contradict or control the terms of a will, yet that such evidence is receivable to show the circumstances surrounding the testator, the subject-matter of the devise, and the persons to be benefited thereby, in order to place the court, so far as may be, in the situation of the testator, and, looking from his standpoint, to determine both the subject and

objects of his bounty, is equally well settled.   *Hall v. Stephens*, 65 Mo. 670, and cas. cit.

Sir James Wigram, in his learned work on wills, says in reference to such extrinsic evidence:

### "PROPOSITION V.

"For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every *material* fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will.

"The same (it is conceived) is true of every other disputed point, respecting which it can be shown that a knowledge of extrinsic facts can, in any way, be made ancillary to the right interpretation of a testator's words."   Wigr. on Wills, 142.

The doctrine thus asserted is the well-settled law of this court.   *Noe v. Kern*, 93 Mo. 373; *Suydam v. Thayer*, 94 Mo. 49; *Munro v. Collins*, 95 Mo. 33.

And in construing wills, the pole-star of construction or exposition of a will, the meaning, the intention of a testator, is never to be lost sight of; single words, single clauses, will not be considered singly; but the whole instrument, its general scope and design as gathered from its four corners, will be taken into consideration, in connection with the surrounding circumstance when properly admissible, in order that the intention of the testator may, if possible, prevail.   This rule is emphasized by our statute, which declares that: "All courts and others concerned in the execution of last wills shall have due regard to the directions of the will,

and the true intent and meaning of the testator in all matters brought before them." R. S. 1889, sec. 8916.

And, when giving a proper and practical construction to wills, technical rules must yield to the obvious meaning of the testator, gathered from all parts of the instrument and as illustrated by evidence of his situation and surroundings. *Carr v. Dings*, 58 Mo. 404; *Collier's Will*, 40 Mo. 287; *Allison v. Chaney*, 63 Mo. 279; 94 Mo., *supra*. All other rules of construction are subordinate and auxiliary to this leading and predominant principle.

Let us apply the rules already stated to the facts in evidence: So far as necessary to recite them for the present purpose, when briefly told, they are the following: Hiram Rich, the husband of the testatrix, died intestate in 1862, at Leavenworth, Kansas, leaving his widow, Julia A. Rich, his three children, Hiram Rich, Jr., James W. Rich, Mrs. Kate Greene and a grandson, Bradley Rich, son of Lucius Rich, deceased, as his only heirs at law, and, under the statutes of that state, one-half of the property of the decedent went to his widow, and the other half to his children and grandson in equal parts. His widow administered on his estate in 1863, the property then consisting of the Salt Creek farm of some two hundred and seventy-six acres in Leavenworth county, and personal property of the appraised value of $56,083.32. In July, 1864, she made a final settlement of the estate, showing thereby a balance in her hands of $23,892.29 after the payment of debts, and about $20,000 uncollected assets; all of which the court ordered to be distributed among the heirs of the deceased. Hiram, the son, and Bradley, the grandson, both died without issue and intestate, before the testatrix made her will.

Mrs. Kate Greene never asked for and never received from her mother any part of the real or personal property of her father to which she was entitled; but allowed her portion to remain in her mother's hands for the latter's support, as long as she lived. On the

other hand James W. Rich exacted from his mother not only what was coming from his father's estate, which he had run through with, but he had become indebted to her in the sum of about $4,000, for which she had a mortgage on his farm which was about its value. At the time the testatrix made her will, to-wit, June 30, 1874, she owned the lots aforesaid in Kansas City, worth probably some $2,500 to $3,000, but incumbered with taxes and accumulated penalties to the amount of some $2,000. No income had arisen from these lots for several years. The Salt Creek farm was worth some $7,000 to $8,000. These items, together with some stocks and a note on Whitney for $4,000, constituted the sum total of her property, worth at the time she wrote her will some $18,000. Her income from the farm was between $300 and $400 per annum, and from Whitney and her bank stock she probably derived annually some $400 more. Mrs. Kate Greene in 1874 was thirty-four years of age and her husband, forty-one. She then had lost two children and had four living, ranging in years from eleven to two, and subsequent to her mother's death two more children were born to her. Mrs. Greene's husband, Oliver D., was an officer in the army, and he had accumulated no property; depended on his salary for a support, and, a short time before the execution of the will, had sold his home.

James W. Rich at the date of the will had no property to speak of, but his mortgaged farm; was forty-five years of age; his wife, twenty-eight, and he had three children, Medora Annie, a child by his first wife, the grandchild and adopted daughter of the testatrix; Julia Eliza, four years old, and a son of two years. Such were the financial circumstances of the testatrix and such her surroundings at the time she executed her holographic will. To her daughter, Mrs. Greene, she was legally indebted for the long use and appropriation she had had of that daughter's portion of the estate, and to her she was, also, morally indebted for her

kindly forbearance in permitting her without charge or interest thus to use her property. That the testatrix fully appreciated her dual obligations in this regard, is touchingly shown in the fourth clause of her will, and that this is the correct view of that clause is confirmed by the testimony of the daughter herself, who says: "My mother had both family afflictions and troubles, and financial losses, in administering her husband's estate. These were the troubles to which she referred in clause 4 of her will."

This then being the situation of the testatrix, and these her antecedents, what could be more natural than that she should give recognition of her obligations to that daughter, and expression of her affection for her in bestowing upon her the most considerable portion of her estate, accompanying such bestowal by words of eloquent and reminiscent tenderness? Courts in construing a will are not to lose sight of the prominent fact that, while a contract springs from opposing minds and combatting intellects, a will in large part springs from the better part of our nature; and, in order to be construed in a natural manner, must be construed in a way which best accords with what the heart of the testator would dictate, if left unfettered by technical rules. *Olmstead v. Dunn*, 72 Ga. 854. And, unless the words used by the testatrix in the fourth clause are not entirely repugnant to what it is but natural to suppose the testatrix would do in the given circumstances, such natural and practical construction must prevail.

IV. But it is strenuously insisted that the words, " *sole* use of herself and children, " precludes the idea that Mrs. Greene was to be the *sole* recipient of the testatrix's bounty as conveyed by, and contained in, the fourth clause of her will. It must, however, be remembered that frequently such expressions will not be regarded as expressive of an intention to create a *trust* but merely as indicative of the *motive* of the gift to the devisee. For this view there is abundant authority.

1 Perry on Trusts [3 Ed.] secs. 116, 119; 1 Redf. on Wills
[1 Ed.] 412-13 ; 2 Devlin on Deeds, sec. 838 ; *Mackett v.
Mackett*, 14 L. R. Eq. Cas. 49 ; *Landon v. Moore*, 45
Conn. 422 ; *Whitridge v. Williams*, 17 Atl. Rep. 938 ;
*Blue v. Peneston*, 24 Mo. 240 ; *English v. Beehle*, 32
Mo. 186. The diligence of counsel for plaintiff supports
this view with quotations from many other aptly cited
authorities.

And it is said that, latterly, courts are not so astute
as they formerly were to imply a trust from certain
words ; but are more inclined to find in the words but
the mere statement of a motive for the devise, or the
vesting of a discretion in the trustee. 1 Perry on
Trusts, sec. 117, note, p. 127 ; 1 Jarman on Wills
[Rand. &. T. Ed.] 688-9.

The authorities on this point of implied trusts are
confused and contradictory. 2 Pom. Eq. Jur., sec. 1012,
note ; Jarman on Wills, *supra*. But all the cases seem
to be agreed that every case must depend on the con-
struction of the particular will under consideration,
and that no trust will be implied, if, looking at the
whole context of the will and all the circumstances
together, the probabilities are against implying a trust,
but favor the theory that the words were merely
employed to express the motive prompting the testa-
tor's gift. Perry on Trusts, secs. 114, 116 ; Pom. Eq.
Jur., sec. 1012, and cas. cit. Cases like the present one
differ widely from those where the bequest or devise
bestows property in direct terms upon several persons
by name, or one person by name, and the others are
designated in such a way as to be ascertained by
extrinsic evidence, in which case, of course, the
donees, ascertained and ascertainable, take as tenants
in common. Of this sort is the case of *Hall v. Stephens*,
65 Mo. 672, and cases there cited. But that case is
obviously inapplicable to the case in hand.

Looking at this will in all its aspects, at the ante-
cedents of the testatrix and of her children, it is utterly

Small v. Field.

inconceivable with her sense of gratitude and affection for her daughter, so distinctly recognized in the fourth clause, that she should in the *same* clause repudiate her obligations and disown her protested affection for that daughter, by making her a mere tenant in common of the estate granted, with her four living and all future children, or, what is tantamount thereto, making her but the mere trustee or conduit for the interests of those children.

The central idea of the testatrix was the creation of a separate estate for her daughter, and this doubtless caused her to underscore the word "*sole;*" and then she closes the sentence with an expression of the motive which prompted her in creating that separate estate, to-wit, that the donee and her children should have a resource in the property left the daughter which could not be taken away by an improvident and non-accumulating husband. We, therefore, rule this point also, against the appealing parties, holding that the fourth clause of the will creates neither an implied trust nor a tenancy in common.

V. Other considerations go but to strengthen and confirm the correctness of this view. Our statute, section 4004, Revised Statutes, 1879, declares that: "In all devises of lands or other estate in this state, in which the words, 'heirs and assigns,' or 'heirs and assigns forever,' are omitted, and no expressions are contained in such will whereby it shall appear that such devise was intended to create a life-estate only, and no further devise be made of the devised premises, to take effect after the death of the devisee to whom the same shall be given, it shall be understood to be the intention of the testator thereby to devise an absolute estate in the same, and shall convey an estate in fee simple to the devisee, for all such devised premises."

Under this statute it is obvious that the absolute estate in fee granted to Mrs. Kate Greene could not be impaired, cut down or qualified except by words as

affirmatively strong as those which conveyed the estate to her. Such has been the ruling upon similar statutes elsewhere. *Roseboom v. Roseboom*, 81 N. Y. 356, and cases cited. And this seems to be the proper rule to apply apart from any statutory regulation. *Lambe v. Eames*, L. R. 10 Eq. 266 ; *Thornhill v. Hall*, 2 Clark & Fin., *loc. cit.* 36 ; *Clarke v. Leupp*, 88 N. Y. 228, and cases cited.

Having already determined that there is nothing in the words, "*sole use* of herself and children," upon which to imply a trust, and that no tenancy in common was thereby created, and as there is no expression employed to create a life-estate, and no further disposition is made of the devised premises to take effect after the death of the devisee, the statute quoted must be held to dominate this case ; especially so, when counsel who combat this view naturally admit that the meaning of the words, "and children," are of such uncertain and conjectural import.

VI. It is apparent also from the second and third clauses of the will that when the testatrix intended to create a life-estate, or to divide property between named parties, she did so in clear and unmistakable terms. This fact does much to add force and conclusiveness to the foregoing views as to the nature of the estate she designed her daughter to take. *Phelps v. Bates*, 5 Atl. Rep. 301 ; *McKee's Appeal*, 104 Pa. St. 573 ; *Landon v. Moore*, 45 Conn. 422 ; *Murfitt v. Jessop*, 94 Ill. 160.

VII. Again, if Mrs. Rich really designed by the fourth clause of her will that the infant children of her daughter should take either as beneficiaries under an implied trust or as tenants in common with their mother, it is remarkable that she did not call them by name, as she did all the other beneficiaries in her will, and say whether she meant those then living, or those subsequently to be born, or both; and that she did not give some directions as to the property, and how it should be invested or disposed of as she certainly did as to the

Small v. Field.

other beneficiaries.   *Jones v. Jones*, 2 Beasley (N. J.) 237 ; *McKee's Appeal*, 104 Pa. St. 574.

VIII. Furthermore, the testatrix has placed her own and the same interpretation on the fourth clause of her will already placed upon it in the foregoing remarks, for in the fifth clause she speaks of the residuary clause aforesaid, as " the amount willed to my daughter, Kate Greene," and then directs that she pay $300 out of the amount thus bestowed on her to Thomas H. Wilson. This language is susceptible of but one meaning, and that is, that the testatrix understood her own language in the fourth clause to mean that Kate Greene was made thereby sole residuary legatee.   This supposition must be indulged, or else the very unfavorable presumption, one at war with the protestations of deep affection she had made for her daughter, to-wit, that after having made her but a tenant in common, or beneficiary with her born and yet unborn children, she would still further cut down and diminish her bequest or devise by requiring her daughter to pay, out of such diminished "amount," the sum aforesaid.   Such a supposition will not be indulged, and there is no sound or even plausible reason for its indulgence.

And the rule is that, when a testator interprets a particular clause in his will, the courts, when called to construe it, will follow that interpretation.   *Reinders v. Koppelman*, 94 Mo. 343.

Other reasons might be advanced favoring the conclusions already announced, but it is unnecessary to do so.

Satisfied with the correctness of the rulings of the lower court, we affirm the judgment.   All concur, except BARCLAY, J., not sitting.