YOCUM et al., Appellants, v. SILER et al.

In Banc, February 19, 1901.

1. **Will:** WORDS OF ABSOLUTE GRANT: MODIFICATION. When the words of a will at the outset clearly indicate a disposition in the testator to give the entire interest, use and benefit of the estate absolutely to the donee, it will not be cut down to a less estate by subsequent or ambiguous words, *inferential in their intent.*

2. ———: ———: ———: CASE STATED. The will, in the fifth clause, declared: "To my well-beloved son, William F. Yocum, my natural son, I bequeath absolutely the northwest quarter . . . . . . with the express understanding and restriction, namely, that if my said son

Yocum v. Siler.

dies without legal issue, descendants of his, legitimate issue of his, said lands shall pass to" testator's sisters, nephews and nieces. After children were born to the devisee he conveyed the land by warranty deed. *Held*, that the will vested an absolute estate in said devisee, and that his deed conveyed the title. The testator did not intend to vest this estate in William's sisters, etc., but in William if he had issue. (SHERWOOD and MARSHALL, JJ., dissent in separate opinions.)

3. ———: ———: ———: ESTATE-TAIL. Said will did not create an estate-tail by implication.

4. ———: ESTATES-TAIL: "DYING WITHOUT ISSUE." Estates by implication have been abolished by statute in this State; for, by section 6 of the Statutes of Wills, it is provided that the words "dying without issue" mean "issue living at the death of the ancestor named," thus removing from such words the meaning of "indefinite failure of issue."

5. ———: INTENTION: STATUTE 1845. The Revised Statute of 1845, required "all courts and others concerned in the execution of last wills to have due regard to the directions of the will, and the true intent and meaning of the testator." This is a general canon for the construction of a will irrespective of statutes.

6. ———: ———: WORDS "HEIRS AND ASSIGNS." The words "heirs and assigns" or "heirs and assigns forever," were not necessary to create a fee simple under Revised Statutes of 1845.

7. ———: ———: CONDITIONAL LIFE ESTATE. Revised Statutes of 1845, section 45, page 1085, will create an estate in fee simple unless it appears that the "devise was intended to create a life estate only." And where the life estate is made conditional on the happening of a contingency, which never happens, whereas antecedent words say the devisee is to have the land "absolutely," it will be held that the words of limitation are inoperative.

8. ———: EXECUTORY DEVISE. The Missouri statute permits a testator to devise a fee simple to his devisee, and in the same connection to make a good executory devise in case the devisee dies without issue living at his death.

PER SHERWOOD, J., IN DISSENTING OPINION.

Will: LIFE ESTATE: REMAINDER: EXECUTORY DEVISE: CLASS. Under the will in this case, William F. Yocum took but a life estate; second, his prospective children, a contingent remainder; third, the devises

Yocum v. Siler.

to the sisters and nieces were executory devises; fourth, upon the birth of Yocum's first child, the contingent remainder became a vested remainder in such child, but opened and let in after-born children, and owing to the birth of such issue the entire estate was disposed of, and left nothing for the executory devisees; fifth, such children were postponed in the enjoyment of the fee simple vested in them until the termination of their father's life estate.

PER MARSHALL, J., IN DISSENTING OPINION.

Conditional Estate: ENLARGEMENT: CONTINGENT REMAINDER: FAILURE OF CONTINGENCY. The will in this case did not create a conditional fee in William F. Yocum; did not vest in him a lesser (life) estate to be enlarged into a fee upon the happening of a condition subsequent (the birth of children to him). But the intention of the testator was that William should enjoy the property during life, and if he had descendants living at his death they should have the fee; but if he had no children, the fee should go to his nearest of kin, his sisters, nephews and nieces. That being the case, William took a life estate; his children, the fee; and the contingent remainder to the sisters, etc., failed, because the contingency upon which they were to have the fee never occurred.

Appeal from Platte Circuit Court.—*Hon. Wm. S. Herndon,* Judge.

AFFIRMED.

*James H. Chinn* and *J. E., J. F. & R. H. Merryman* for appellants.

(1) The rule in Shelley's case has long since been abrogated, and is no longer considered as authority in construing deeds and wills. Riggins v. McClelland, 84 Mo. 33; Tesson v. Newman, 162 Mo. 195. (2) Revised Statutes 1889, sec. 8836, reduces all estates in fee-tail to a life estate in the first taker, as a life tenant, and the fee in the remainderman. (3) In the interpretation of a will, the intention of the testator is the polar star, and in searching after the intention, the whole

will must be read together, and effect given to every clause of it, and words used are to be understood in the sense indicated by the entire instrument. Chiles v. Bartleson, 21 Mo. 344; Morrison v. Thistle, 67 Mo. 598. (4) In construing this section, the word "absolutely," preceding the words, "the northwest quarter," etc., is to be understood, from the context of the whole will, to mean that William Franklin Yocum should hold and enjoy a life estate in the property, free from the claim of all persons during his life. This is manifest from the latter part of the sentence. Harbison v. James, 90 Mo. 411; Russell v. Eubanks, 84 Mo. 83; Bean v. Kenmuir, 86 Mo. 666; Schorr v. Carter, 120 Mo. 416.

*James W. Coburn* for respondents.

(1) Testator devised an absolute estate to his son William F. Yocum, who had the legal right to dispose of it by deed. (2) No life estate was either expressly or impliedly devised to William F. Yocum. (3) No estate tail can be created by implication. 4 Kent (9 Ed.), 274, p. 303. A gift over after the definite failure of issue does not confer an estate-tail. 29 Am. and Eng. Ency. of Law, p. 385-386; 1 Jarman Wills (5 Ed.), 555, 561. Even had there been an express life estate to William F. Yocum, an estate in the issue could not be implied. 1 Jarman Wills (5 Ed.), 557, 561. (4) There can be no remainder after a fee. State ex rel. v. Tolson, 73 Mo. 320; Rubey v. Barnett, 12 Mo. 6; Allen v. Claybrook, 58 Mo. 131; 2 Redfield on Wills, 277; Wead v. Gray, 78 Mo. 59; Schorr v. Carter, 120 Mo. 414; Munro v. Collins, 95 Mo. 33; Cornwell v. Orton, 126 Mo. 355; Rothwell v. Jamison, 147 Mo. 602; Cornwell v. Wulff, 148 Mo. 542; Giffird v. Choate, 100 Mass. 343; Howard v. Carusi, 109 U. S. (West), 575; Roberts v. Lewis, 104 U. S. (West), 945;

Hood v. Dawson (Ky.), 33 S. W. 75; Haight v. Pine, 39 N. Y. S. 511; Ewing v. Barnes (Ill.), 40 N. E. 325; Banzer v. Banzer (N. Y.), 32 N. Y. S. 803; Mitchell v. Littsburg, etc., Co. (Penn.), 31 Atl. Rep. 37; Shaw v. Erwin, 19 S. E. 499. (5) The most that appellants could claim is that the estate devised was a defeasible fee—defeasible on W. F. Yocum's dying without leaving issue alive at his death—but as there were legitimate children of his, living at his death, there was no defeasance. Newsom v. Holesapple (Ala.), 15 So. Rep. 644.

GANTT, J.—This is an action in ejectment by plaintiffs to recover of defendants the northwest quarter of section 7, township 53, range 35, said lands lying in Platte county, Missouri. The judgment in the circuit court was for defendants, and plaintiffs appeal.

The petition is in the usual statutory form, and the answer is a general denial.

The case was tried upon the following agreed statement of facts and the will of George W. Yocum, deceased, upon part of plaintiffs, and the evidence offered by defendants.

AGREED STATEMENT OF FACTS.

"It is agreed by and between the parties hereto that George W. Yocum is the common source of title and that he died in September, 1854, leaving a will, which was duly probated in the probate court of Platte county.

"That Susan Siler is in possession of one hundred acres of the land in controversy, and that William S. Kenney and Lucinda Kenney, his wife, are in possession of the remaining sixty acres of the land in controversy, and were at the time of the institution of this suit.

"That J. W. Turner is in possession, as tenant of Susan Siler, of the one hundred acres, and was at the time of the institution of this suit.

"It is agreed and stipulated that William F. Yocum, in his lifetime, with his wife, for a valuable consideration, by warranty deed dated September 15, 1858, conveyed all the land in controversy to William J. Norris, which deed is recorded in deed book "O," page 170, of Platte county, Missouri.

"And that William J. Norris, by warranty deed, conveyed the same land to Samuel Alexander, which deed is recorded in deed book "T," page 240, of the records of Platte county, Missouri.

"And that Samuel Alexander conveyed said lands, by warranty deed, to Elias Siler, which deed is recorded in deed book "1," page 462, of Platte county, Missouri.

"That Elias Siler is dead, and the defendants are the widow and heirs of said Elias Siler, together with J. W. Turner as tenant of Mrs. Siler, who is also in possession of the one hundred acres of land under Mrs. Siler.

"That it is further agreed that the plaintiffs are the legitimate issue of William Franklin Yocum and were living at the date of William F. Yocum's death, and were the only children of said William Franklin Yocum living at the time of his death.

"It is admitted that William Franklin Yocum died on the twenty-second day of February, 1892.

"That the rental value of the land in controversy is $400 a year.

"That William Franklin Yocum was married the twenty-first day of February, 1854, and that the plaintiffs are the legitimate issue and children of such marriage.

"It is admitted that John W. Yocum is forty-three years of age; that Oscar M. Yocum is forty years of age; and James Yocum is thirty-eight years of age."

Plaintiff offered in evidence the will of George W. Yocum.

The only part of said will affecting this case is paragraph five which is as follows:

"5.  To my well-beloved son, William Franklin Yocum, my natural son, I bequeath absolutely the northwest quarter of section seven of township fifty-three and range thirty-five, the place I now reside on in Platte county, Missouri, subject forever to the reservation for my burial place, made in clause two of this will, and, further, with the express understanding and restriction, namely, that if my said son dies without legal issue, descendants of his, legitimate issue of his, said lands shall pass to Susan Evans, wife of Joseph B. Evans; Marina Botts, wife of Thomas Botts; Elzira Botts, wife of William Botts, my nieces; to Elizabeth Frame, my sister, wife of John Frame, and to George, son of my brother, Stephen Yocum, and Jane Yocum, wife of Milford Yocum, deceased, my sister, in equal parts."

Defendants offered in evidence a deed from Samuel Alexander to Elias Siler dated thirtieth day of March, 1871, for all the land in controversy, duly acknowledged and recorded in the office of the recorder of deeds of Platte county, book 13, page 455.

Plaintiffs objected to the introduction of said deed for the reason that it is immaterial, incompetent and irrelevant, and because, under the terms of the will, William Franklin Yocum acquired only a life estate in the premises and did not acquire the title in fee simple, and therefore his deed to Norris could not affect the title acquired by plaintiffs, the legitimate issue of said William F. Yocum at the time of his death; and plaintiffs object to the introduction of any evidence of title derived through said William Franklin Yocum by deed, for the same reasons.

Which objections were overruled by the court and exception duly taken, and the deed read in evidence.

Defendants offered in evidence the will of Elias Siler, deceased, dated October 28, 1890, which was duly probated, devising said lands to Susan Siler for life, and at her death to the defendants other than Turner.

Defendants objected to said will for the reason that it was incompetent and irrelevant, and for the same reason set out in the objection to said deeds.

The objections were overruled and exceptions duly taken, and said will read in evidence.

Plaintiffs offered the following declaration of law, viz.:

"The court declares the law to be that under the will of George W. Yocum, deceased, William Franklin Yocum only took a life estate in the real estate described in the will and in the petition, and that the plaintiffs are entitled to the possession of the land sued for, and judgment should be entered for them for such possession."

Which was refused by the court and exception duly taken.

We are called upon to construe the meaning of the fifth clause of the last will of George W. Yocum, as above set out. Did the testator intend thereby to give his son, William F. Yocum, a fee simple estate in the lands mentioned in said item, and if so, are there any unbending, rigid rules of law which will compel us to disregard such manifest purpose on his part and hold that he only gave him a life estate?

This will was executed in 1853 and probated in 1854. The statute of wills of 1845, then in force, and still the law of this State, required "all courts and others concerned in the execution of last wills to have due regard to the directions of the will, and *the true intent and meaning of the testator,* in all matters brought before them." [R. S. 1845, sec. 51, p. 1086.] This is also a general canon for the construction of wills irre-

spective of the statute.   By the words "bequeath absolutely,"
he unquestionably intended to devise to his said son his whole
estate in said lands.   These words are ample for that purpose
in a will, and it is unnecessary to cite precedents to establish
that it has been often so held.   It is also settled by many well
considered cases that when the words of the will in the first
instance clearly indicate a disposition in the testator to give the
entire interest, use and benefit of the estate absolutely to the
donee, it will not be cut down to any less estate by subsequent
or *ambiguous words, inferential in their intent.*   [Small v.
Field, 102 Mo. 104; Clarke v. Leupp, 88 N. Y. 228; Lambe v.
Eames, L. R. 10 Eq. Cas. 266.]

The words "heirs and assigns" or "heirs and assigns for-
ever," were not necessary to create a fee simple when this will
was executed, nor when probated.   [R. S. 1845, sec. 2, page
219.]

In Small v. Field, 102 Mo. 123, it was held by this court
that "in giving a proper and practical construction to wills,
technical rules must yield to the obvious meaning of the tes-
tator, gathered from all parts of the will........ All other
rules of construction are subordinate and auxiliary to this
leading and predominant principle."

It can not be doubted, then, that if the testator had stopped
with the words, "To my well-beloved son, William Franklin
Yocum, my natural son, I bequeath absolutely the northwest
quarter of section 7, township 53, range 35," the said son
would have taken a fee simple absolute.   But it is contended
that, because the testator considered that his said son might die
without having any descendants of his own at his death, and
desired to provide in such case that the said tract should go
to certain neices and sisters of his, thereby the estate of the son
was cut down to a fee-tail, and by virtue of our statute to a life
estate only.

Vol 160 mo—19

We have already adverted to the general rule that when in the first instance, a fee simple is given by will to the donee, it will not be restricted or cut down to any less estate by subsequent or ambiguous words, *inferential in their intent.* Not only is this the general doctrine both in England and the States of our Union, but it was in 1853, as now, the statutory rule of this State.

By section 47 of the chapter on Wills, 1845, it was expressly provided that, "In all devises of lands, or other estate in this State, in which the words, 'heirs and assigns' or, 'heirs and assigns forever,' are omitted, and no expressions are contained in such will, whereby it shall appear that such devise was intended to convey a *life estate* only, and no further devise be made of the devised premises, to take effect after the death of the devisee to whom the same shall be given, it shall be understood to be the intention of the testator thereby to *devise an absolute estate in the same,* and shall convey an *estate in fee simple* to the devisee, for all such devised premises."

Did George W. Yocum devise to his son William F. Yocum "any lands" without using the words "heirs and assigns" or "heirs and assigns forever?" Most assuredly he did. Did he use any expressions whereby it appears that he only intended to give his said son a life estate "*only?*" Most obviously he did *not.* Did he in the language of the statute, make "a further devise of the devised premises to take effect after the death of the first devisee?"

We answer, he did only conditionally and as that contingency never happened, that clause of the will is *wholly inoperative,* and we must construe the writing as if these words had never been superadded, and that the testator made *no further devise* of the devised premises to take effect after the death of his son William F. Yocum, and this being so, must

hold that said son took a fee simple as directed by that statute. And this we shall see is the construction put upon a similar statute in Great Britain.

Says Jarman in his treatise on wills, in his exposition of the British statute, 1 Vict., ch. 26, sec. 28, which provides, "that where any real estate shall be devised to any person without words of limitation, such devise shall be construed to pass the fee simple . . . . . . . . *unless a contrary intention shall appear by the will,*" "*the onus probandi* under the present statute lies on those who contend for the restricted construction; and is not discharged by showing that another devise in the will contains formal words of limitation." [2 Jarman on Wills, *1135.]

But the contention is that this fifth item or clause of the will of George W. Yocum created a fee-tail in William Franklin Yocum which the statute of 1845 converted at once into a life estate.

This necessitates an examination of the doctrine of fee-tails under the statute *"de donis,"* 13 Edward the First, to which our statute of 1845 refers as determining what was a fee-tail.

By the ancient common law, if a grant was made to a man and the heirs of his body, the descent of the estate was confined to the heirs so described, and could not go to his collateral heirs. So if the grant had been made to him and the heirs *male* of his body, it excluded not only all the collateral heirs, but the female in the lineal line. Nor could the grantee alienate so as to defeat the succession. But to give facility to alienations, the *courts* at length, held that estates of such limited succession were *conditional fees* and that as soon as the grantee *had issue,* the *condition* was fulfilled and the grantee might sell his land or forfeit it or charge it with incumbrances. To counteract this ruling of the courts, Parliament passed the statute *"de donis."* The preamble to that statute

recites that: "Where one giveth land to another and *the heirs of his body,* it seemed very hard to the grantors and their heirs, that their will expressed in the grant should not be observed. Instead of which, after issue born, the grantee had power to aliene his land contrary to the mind of the giver and contrary *to the form of the gift;"* and then provided "that the will of the giver, according to the form in the deed of gift manifestly expressed, should be observed so that those to whom the land was given under such condition shall have no power to aliene the land so given, but it shall remain unto the *issue* of them to whom it was given after their death or shall revert to the donor or his heirs if issue fail." [Statute of Westminster 2 (13 Edw. 1, ch. 1).]

In this statute, estates-tail originated. The name was borrowed from the feudists, among whom it signified a mutilated or truncated inheritance, from which the heirs general were cut off. [2 Minor's Inst., p. 79.]

Washburn thus defines the requisites of an estate-tail: "It is therefore requisite in order to create such an estate that in addition to the word 'heirs,' there should be words of procreation which indicate the body from which these heirs are to proceed or the person by whom begotten........A general limitation to a man and the heirs of his body is sufficient, it being immaterial of whom begotten." [1 Washburn on Real Prop. (5 Ed.), p. 107.]

These are the requisites of an express grant or devise of an estate-tail.

It is plain the will of George W. Yocum does not create such an estate within the above description.

But it is urged that an estate-tail can be and is created by implication, and unquestionably this was true, both in England and in this country prior to the abolition of estates-tail, and in determining when an estate-tail was created by implication we

must look to the interpretation of the statute *"de donis"* by the English courts.

At a very early period after the enactment of the statute *"de donis"* the question arose as to the meaning of the words "dying without issue." Did they mean a dying without issue living at the very time of the death of the first taker, or ancestor named in the will or deed, or did they mean a general or indefinite failure of issue.

If they meant dying without issue living at the death of the first taker, then an executory devise over was good because it did not violate the rule against remoteness or perpetuities, but if they meant an indefinite failure of issue, i. e., a failure of issue whenever it shall happen sooner or later without any fixed, certain, definite period within which it must happen, it was held the executory devise over after such an indefinite failure of issue was void, because the period when the contingency on which the remainder over depended must happen, was too remote or uncertain, and might tie up the property for generations and lead to a perpetuity or property perpetually unalienable, and therefore void. It was generally held by the English courts that the words meant an indefinite failure of issue, and by implication created an estate-tail in the first taker or ancestor named. Such was, we think, the great weight of authority.

This conclusion was reached after a memorable struggle, and though acquiesced in, many of the greatest judges reluctantly accepted it and seized upon the slightest circumstance which indicated that the grantor or testator meant dying without issue at the death of the first taker to defeat this interpretation. But in the noted cases of Porter v. Bradley, 3 Term Repts. 143, and Roe v. Jeffrey, 7 Term Reports 589, Lord KENYON took a different view and held the executory devise over to be good, relying upon Pells v. Brown, Cro. Jac. 590.

In Fosdick v. Cornell, 1 Johns. Repts. 439, the words, "that if any of the testator's sons should die without heirs male the land should go to the survivor," came before the court for construction, and the question was whether these words created an estate-tail or not, and the court held they did not, and the devise over was good, the court saying the words "dying without children must be taken to be children living at the death of the party and not an indefinite failure."

In Jackson v. Blanshan, 3 Johns. Reports 292, Chief Justice KENT held that the words "without lawful issue" meant issue living at his death.

In Moffat v. Strong, 10 Johns. Reports 12, the words were, "if any of the sons should die without lawful issue, then his part to go to the survivors." Chief Justice KENT, after admitting there were contradictory opinions, came to the conclusion "that the intent of the testator according to the settled construction of terms was to provide for the surviving sons on the contingency of either of the sons dying *leaving no issue at his death,* and the intention being consistent with the rule of law, the limitation over was good by way of executory devise." Such has been maintained to be the law since that date in New York. [Jackson v. Staats, 11 Johns. Rep. 337.]

This resume of the doctrine has been made in order to gather the full significance of our own statutes on the subject. In 1825 our Legislature abolished estates-tail in this State. The language of that act is somewhat different, though not materially, we think, from the Act of 1845, which in terms also abolishes estates-tail and provides that thereafter, where by any conveyance or devise the grantee shall be seized of an estate which under the statute (13 Edwd. 1) would have been held an estate tail, every such conveyance should vest only a life estate in the grantee and upon his death should go to his children. [R. S. 1845, sec. 5, p. 219.]

But in the very next section of the same act it is provided that "whenever a remainder in lands or tenements, goods or chattels, shall be limited by deed or *otherwise*, to take effect upon the death of any person without heirs or heirs of his body or without issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor." These two sections being in *pari materia* and standing in juxtaposition, must be construed together and full effect given to both if possible. The intention of the lawmaker we think is clear. Our lawmakers were cognizant of the struggle between the courts over these words, and of the English doctrine followed by many American courts construing these words to create a fee-tail in the first taker or ancestor named, and they intended that the doubt as to their meaning should be removed by plain, unequivocal words.

They determined, in a word, that no estate-tail should be created by this ambiguous expression after that date. As said by this court, per SHERWOOD, J., in Naylor v. Godman, 109 Mo. loc. cit. 550, "this statute was evidently enacted to prevent having the words 'die without issue,' construed to mean an 'indefinite failure of issue,' as by some authorities the former words were construed to mean." By so construing these two sections, we give full effect to both, and the decisions of this court where the words "heirs of his body" and similar expressions have been held to create a fee-tail, and also gives full effect to the statutes of wills, which permits a testator to devise a fee simple to his devisee, and if he dies without issue living at his death, then to make a good executory devise over.

So that, in 1854, when this will took effect, the statute of this State required the words "dying without issue" to be construed as meaning "heirs or issue living *at the time of the death of the person named* as ancestor." [Sec. 6, chap. 32, R. S. 1845, p. 220.]

These words as used in this will then meant if William Franklin Yocum died without issue or descendants living at his death, and the limitation to his nieces and sisters would have been a good executory devise had he died without children or descendants of his then living, but as he had three sons living, the executory devise over of course failed because the condition could never happen upon which the sisters and nieces were to take.

Let it be conceded that both the English and our own courts in construing the statute *"de donis,"* 13 Edw. I, prior to the Act of 1845, supra, held that if in a devise to A and his heirs which would otherwise create a fee simple, it was afterwards provided that if A dies without issue or on failure of issue then a devise over to B in fee, A only took an estate-tail *by implication,* and if he had issue the estate passed to them *ad infinitum.*

Yet when it is considered that this conclusion was only reached by holding that these words "dying without issue" meant *an indefinite failure* of issue, and this postponed the vesting of the executory limitation so long that it violated the rule against perpetuities and was therefor void, as our statute of 1845 gave a different meaning to those words, and directed they should be construed as meaning *heirs or issue living at the time of the death of the ancestor named, no such implication* can longer be raised from their use in this State. Such is the construction put upon the statute 1 Vict., ch. 26, sec. 29 (1837). In 1 Jarman on Wills, 521, it is said:

"No implication of an estate-tail can arise from words importing a failure of issue, in a will made or republished since the year 1837, unless an intention to use the phrase as denoting an indefinite failure of issue be very distinctly marked, as the statute 1 Vict., ch. 26, sec. 29, provides that such words shall be held to mean a failure of issue in the lifetime or at the death

of the person referred to, unless a contrary intention shall appear by the will," etc.

Thus we find that this artificial rule has been abolished both in England and in this State by removing the foundation upon which it rested, because experience demonstrated that it violated the natural meaning of language and defeated instead of subserving the intent of the testator.

The learned author, Jarman, further says (*page 522, referring to the effect of the statute 1 Victoria, ch. 26): "Under this clause, coupled with the preceding section, which makes a devise confer an estate in fee without words of inheritance, it will generally happen, in cases in which, according to the old law, the prior devisee would have been a tenant in tail, by the effect of the words devising over the property on the failure of his issue, that he will, under the new rule of construction, take an estate in fee simple, subject to an executory devise in the event of dying without leaving issue at his death; and this no doubt was the effect contemplated and designed by the Legislature."

So in Missouri, since the revision of 1845 provides that where a remainder in lands shall be limited to take effect on the death of any person "without heirs" or "heirs of his body" or "without issue," the words "heirs" or "issue" shall be construed to mean heirs or issue *living at the death of the person named as ancestor,* the ground-work upon which a fee-tail was *implied* in such a grant or devise is swept away, and no reason can exist for construing a will containing these words as creating a fee-tail. But we are not left to construe that statute alone in determining what estate this will conferred upon the son, William Franklin Yocum. The statute of wills, which we have already quoted and considered, was then in force and must govern, and it provided he should take a *fee simple* in the absence of express words showing an intent to give him only a *life estate,* and we must all agree that there are

none such.    Nor is there lack of authority in this State and elsewhere to sustain this view.

In John Den v. Snitcher, 14 N. J. L. 53, the words of the will were: "I give and bequeath to my son S. C. my home plantation, and my will is *that if he shall die without issue,* then the said plantation shall be divided," and one-half was given to trustees for the Society of Friends, and the other to his wife, his son Samuel and two grandchildren, etc.    At that time the Act of 1784, Revised Laws of New Jersey, was in force, and was in the exact words of section 47 of our statute of wills (1845), above cited.    The chief justice for the court said:    "It appears to me hardly possible, that any intelligent mind, unembarrassed by technical rules and legal refinement, can entertain a doubt upon the plain reading of this will, that the testator *intended* his son Samuel should have the whole plantation in fee simple *in case he had issue,* and that at all events, he should be the absolute and unconditional owner of one-half of it.    He did not intend to give the estate to Samuel's issue, but to Samuel if he had issue."    And it was so held.

Section 47 of the chapter on wills (1845), had been continued ever since.    In 1879 it was section 4004, and it has received a liberal construction by this court.    In Cook v. Couch, 100 Mo. 34, it was held that where a fee was given in the first instance, it would take express words showing an intent to cut down the fee to a life estate.    And in Small v. Field, 102 Mo. 104, it was again considered in a case in which the will gave the devisee certain property for the sole use of herself and *children,* and it was held that the mother took a fee simple absolute.    The contention was that she took as a tenant in common with her children, but if this were not true that she took only a life estate, remainder to her children, but this court said (after quoting section 4004, Revised Statutes 1879, the same as section 47 of statute of wills, 1845): "Under this statute it is obvious that the absolute estate in fee granted

Mrs. Kate Greene could not be impaired, cut down or qualified except by words as affirmatively strong as those which conveyed the estate to her.   Such has been the ruling upon similar statutes elsewhere."   [Citing Roseboom v. Roseboom, 81 N. Y. 356; Clark v. Leupp, 88 N. Y. 228.]

This language of our own court is in complete harmony with that of the Lord Chancellor in Thornhill v. Hall, 2 Clark & Fin. 22, in which he says the rule is without exception in the construction of written instruments, "that where one estate is given in one part of an instrument in clear and decisive terms, such estate can not be taken away or cut down by raising a doubt upon the extent or meaning or application of a subsequent clause, or by *inference* therefrom, nor by any subsequent words that are not as clear and decisive of the clause giving that estate."   And to the same effect will be found Clark v. Leupp, 88 N. Y. 231, and Lambe v. Eammes, L. R. 10 Eq. Cas. 266.

In neither of these cases was there such a clear, positive devise of fee simple in the first instance as this will presents. The express words to cut it down to a life estate are wholly absent, and we can only destroy the fee simple of William Franklin Yocum by resorting to an implication of a fee-tail, when the base-work of that implication had been destroyed before this will was written, and that, too, in the face of a positive enactment, the statute of wills, giving him a fee simple in the absence of express words cutting his estate down to a life estate.

If, as was said in Small v. Field, 102 Mo. 123, "technical rules must yield to the obvious meaning of the testator," then it is plain that George W. Yocum intented to give his son William Franklin Yocum a fee simple absolute in the quarter section mentioned subject only to be determined or defeated if he should die without legal descendants of his own.   As he had legal issue living at his death, the condition upon which his estate might have been lessened, never happened and never

could thereafter, and that estate was absolute as his father intended.

The judgment of the circuit court so holding was right, and is affirmed.

*Burgess, C. J., Robinson, Brace* and *Valliant, J. J.,* concur; *Sherwood, P. J.,* and *Marshall, J.,* dissent in separate dissenting opinions.

SHERWOOD, J. (*dissenting.*)—Ejectment for the northwest quarter of section 7, township 53, range 35 in Platte county, Missouri.

The answers of defendants were general denials.

This controversy turns on the legal meaning, force and effect of the fifth clause of the will of George W. Yocum the original owner of the tract, the father of William Franklin Yocum, the devisee named in the will, the father of the plaintiffs. That clause is the following:

"To my beloved son William Franklin Yocum (my natural son), I bequeath absolutely the northwest quarter of section 7 of township 53 and range 35, the place I now reside on in Platte county, Missouri, subject forever to the reservation for my burial place made in clause two of this will; and further, with this express understanding and restriction, namely, that if my said son dies without legal issue, descendants of his, legitimate issue of his, said land shall pass to Susan Evans, wife of Joseph B. Evans; Marina Botts, wife of Thomas Botts; Elzira Botts, wife of William Botts, my nieces; to Elizabeth Frame, my sister, wife of John Frame, and to George, son of my brother, Stephen Yocum, and Jane Yocum, wife of Milford Yocum, deceased, my sister, in equal parts."

The cause was tried at the December term, 1897, of the circuit court, on the following agreed statement of facts, which is quoted so far as material:

"It is agreed that George W. Yocum is the common source

of title; that he died September, 1854, leaving a will which was duly probated in the probate court of Platte county; that Susan Siler is in possession of one hundred acres of the land in controversy, and that William S. Kenney and Lucinda Kenney, his wife, are in possession of the remaining sixty acres of the land in controversy, and were at the time of the institution of this suit; . . . . . . . that William F. Yocum in his lifetime, with his wife, for a valuable consideration, by warranty deed, dated September 15, 1858, conveyed all the lands in controversy to William J. Norris, which deed is recorded; that William J. Norris, by warranty deed, conveyed the same land to Samuel Alexander, which deed is recorded; that Samuel Alexander conveyed said land, by warranty deed, to Elias Siler, which deed is recorded; that Elias Siler is dead and the defendants constitute the widow and heirs of said Elias Siler; . . . . . . . that the plaintiffs are the legitimate issue of Willam Franklin Yocum, and were living at the time of William F. Yocum's death, and were the only children of said William F. Yocum living at the time if his death; that he was married on the twenty-first day of February, 1854; that he died on the twenty-second day of February, 1892, and that plaintiffs at the time of the trial were respectively, 43, 40 and 38 years of age."

After testimony was introduced as above by plaintiffs, and also the will of George W. Yocum, the defendants offered in evidence a deed from Samuel Alexander to Elias Siler, dated thirtieth day of March, 1871, purporting to convey the litigated land.

Plaintiffs objected to any evidence of title derived through William Franklin Yocum, by deed, for the reason that William Franklin Yocum by the terms of the will aforesaid, only had a life estate in said real estate; objection overruled, and plaintiffs excepted. Defendants offered in evidence the will of Elias Siler, which was objected to by plaintiffs, for reasons above; objection overruled, and plaintiffs excepted.

Thereupon plaintiffs moved the court to declare the law as follows: "The court declares the law to be that, under the will of George W. Yocum, deceased, William Franklin Yocum only took a life estate in the real estate described in the will and in the petition, and that the plaintiffs are entitled to the possession of the land sued for, and judgment should be rendered for them for such possession;" which declaration of law was refused by the court. To which ruling plaintiffs excepted. Upon this the court found in favor of defendants and gave judgment accordingly, and from this ruling results this appeal.

By the terms of the will, William Franklin Yocum took, what would have been at common law an estate-tail; but under the provisions of section 8836, Revised Statutes 1889, this estate-tail was converted by the statute into an estate in the first taker for his natural life only. [Thompson v. Craig, 64 Mo. 312.]

In the case just cited, the provisions of the will of Phillip W. Thompson were as follows:

" 'I give, grant and devise, and bequeath to my said grandchild, Burrell Thompson (saving the life interest above granted and devised to my wife Penelope Thompson), all of the lands and improvements which lie,' etc., embracing the land in question.

" 'I give, grant, devise and bequeath to my granddaughter, Mary Hutson, the lands of my estate situate,' etc. (describing other lands than those devised to plaintiff).

" 'It is my will that in the event that either of my grandchildren, above named, shall die before lawful age, or before leaving a lawful heir or heirs, the property above specified and intended to be given in this will, shall descend to and belong to the survivor of said grandchildren only, and to his or her heirs or legal representatives, and in the event of both said grandchildren, viz, Burrell Thompson and Mary Hutson, dying before marriage, or in the event of leaving no lawful

Yocum v. Siler.

issue by marriage as aforesaid, it is my will that all my estate, intended in this will for them, shall be sold for the use and benefit of the poor persons of Saline county, Missouri, to be expended and paid as my executor may deem advisable and just.'

"It was admitted that plaintiff was twenty-one years of age and had a child or children living; and this, the last will of Phillip W. Thompson, and the written agreement sued on, were the evidence in the case. The defendant asked the court for the following declaration of law: which was refused: 'That the plaintiff in this cause has only a conditional estate in the land mentioned in the petition, and if plaintiff shall die without leaving lawful issue, then and in that event the estate of the plaintiff in said land would cease, although the court may believe from the evidence that the plaintiff has arrived at the age of majority.' "

The action in that case was brought by Burrell Thompson against Hugh Craig on a written agreement for $625, which Craig promised to pay plaintiff for a certain piece of land, provided plaintiff should in twelve months thereafter be competent to give a good title to the land. Plaintiff alleged his competency and that he had made and tendered defendant a deed, such as was required, but defendant refused to receive it, and issue was joined on these allegations. On this state of facts, following Farrar v. Christy, 24 Mo. 453, and Harbison v. Swan, 58 Mo. 147, holding the statute already referred to, accomplished the stated change in the common law, it was ruled that Burrell Thompson, under the will of his grandfather, acquired but a life estate in the property devised to him, and that in consequence of this he could not make such a title to Craig as his agreement called for; and that his marriage and the birth of children to him, did not change the character of his estate.

In subsequent cases this court has followed the same con-

struction of the statute. [Emerson v. Hughes, 110 Mo. 627; Godman v. Simmons, 113 Mo. 122; Bone v. Tyrrell, 113 Mo. 175.]

A similar view was taken in Kentucky, upon a statute like ours, where there was a devise to a young woman (unmarried at the time) and her children, and such devise was held to give her an estate for life with remainder to her children; the court remarking: "It has been observed that the words of the devise, abstractly and literally, import an immediate gift, not only to the devisee in being, but to those not in being. But there being no children *in esse* at the time of the devise, it could not have been the intention to give an immediate estate to them, for that would be impossible. And as the words of the devise, as conceded by all the authorities, manifest a clear intent that the children shall take, the only consistent and natural construction is, that the testator intended the devisee in being at the time, should take a life estate, remainder to the children." [Carr v. Estill, 16 B. Mon. 312.]

The fifth clause of the will created an estate of contingent remainder in the children of William Franklin Yocum, which estate is said to be created in certain circumstances in one of two ways: "Where the estate in remainder is limited to take effect either in a dubious and uncertain person, or upon a dubious and uncertain event." [A Black. Com. 169.]

The learned author of a work on descents, says: "A contingent remainder is that part of an estate in fee bestowed conditionally upon one of two or more persons, which one is not certain; the rest of which is bestowed definitely upon some other person or persons named. The part not thus definitely disposed of to some particular person or persons, is provided to go to some other person or persons of two or more named, which of the two or more is left uncertain, and is to be fixed and made certain by succeeding events. The remainder itself is certain, but the person who is to have it is uncertain until it

is determined by the events named." [Bingham on Descents, 125.]

Chancellor KENT says that the definition (of a contingent remainder) in the New York Revised Statutes, 1723, sec. 13, is brief and precise. "A remainder," says the statute, "is *contingent, whilst the person to whom, or the event upon which it is limited to take effect, remains uncertain."* [4 Kent (14 Ed.), 208, note. See, also, DeLassus v. Gatewood, 71 Mo. 371.]

In Daniel v. Whartenby, 17 Wall. 639, a case which arose in Delaware, where the rule in Shelly's case is in force, a testator, James Tibbitt, devised his estate as follows: "All the rest, residue, and remainder of my estate, both real and personal, of what kind and nature soever, I give, devise, and bequeath to my son, Richard Tibbitt, during his natural life, and after his death to his issue, by him lawfully begotten of his body, to such issue, their heirs and assigns forever. In case my son, Richard Tibbitt, shall die without lawful issue, then, in that case, to my wife, Elizabeth Tibbitt, and my sister, Sarah Heath, and my sister, Rebecca Mull, during the natural life of each of them, and to the survivor of them, and, after the death of all of them, to James Whartenby, son of Thomas Whartenby, of the city of Philadelphia, to him, the said James Whartenby, his heirs and assigns forever. In case the said James Whartenby shall die before my son, Richard Tibbitt, my wife, Elizabeth, my sister, Sarah Heath, and my sister, Rebecca Mull, then, and in that case . . . . . . . the rest and remainder to William Whartenby, Thomas Whartenby and John Whartenby, children of said Thomas Whartenby, of Philadelphia, to them and their heirs and assigns forever.

"Richard Tibbitt, the first devisee, on the fourteenth of May, 1853, after the death of the testator, conveyed the premises to Jacob Hazel, who, on the same day, reconveyed to Richard. Richard died in April, 1863, without issue, not hav-

Vol. 160 mo—20

ing married.   Elizabeth Tibbitt, the widow of the testator, and his two sisters, Sarah Heath and Rebecca Mull, were living at the time of the making of the will, survived the testator, and died before the commencement of this suit.   James Whartenby, the devisee in remainder, and the next in succession, is still living and is the defendant in error in this case.   The plaintiffs in error claim title by virtue of a sale under a judgment and execution against Richard Tibbitt.   The rule in Shelley's case is in force in Delaware, and an estate-tail may be barred there by such a conveyance as that by Richard to Hazel."

James Whartenby brought ejectment against William Daniel for the devised premises, recovered judgment, and Daniel brought error.   The question thus raised by the litigation was what estate the first taker, Richard, took, an estate in fee-tail, or whether he took only an estate for life, with remainder in fee to the issue of his body, contingent upon the birth of such issue, and, in default of such issue, remainder for life to his widow and two sisters, with remainder over in fee after their death to James Whartenby, the defendant in error.   On the one hand it was insisted that the words "issue of his body by him lawfully begotten" were words of limitation and consequently the rule in Shelley's case applied, while on the other it was asserted that those words were, in legal effect, the synonym of *children,* and so were the words of purchase.

After stating and discussing the facts aforesaid, and giving divers reasons why the above rule did not apply, Mr. Justice SWAYNE, the spokesman of the court, said : "We entertain no doubt that the testator intended to give a life estate only to Richard, and a fee simple to his issue, and that they should be the springhead of a new and independent stream of descents. We find nothing in the law of the case which prevents our giving effect to that intent.   We hold that the rule in Shelley's

case, for the reasons stated, does not apply. The estate given to the children of Richard was a contingent remainder. Upon the birth of the first child it would have vested, but subject to open and let in after-born children. The devise to Richard and his issue disposed of the entire estate. The devises over to the widow and testator's two sisters, and to James Whartenby, were executory devises. Upon the death of Richard, with the possibility of issue extinct, the devise to James became a remainder in fee simple, vested at once in interest, but deferred as to the period of enjoyment until the termination of the intermediate life estates." And so the judgment recovered by Whartenby was affirmed.

Inasmuch as the rule in Shelley's case had been abolished in this State long before the present will was drafted, the case just cited and quoted from, seems decisive of the case at bar, saying nothing of cases already cited and quoted from, from our own reports, which announce in legal effect the same result.

It is objected, however, by defendants that no *express estate was* given to the prospective children of William Franklin Yocum, and they took none by implication. The law appears to be well settled that *a fee* may pass by *implication* and so may *an estate for life*. Chancellor KENT says: "A fee will pass by will, by implication of law, as if there be a devise over of land after the death of the wife; the law, in that case, presumes the intention to be, that the widow shall be tenant for life. So, a devise over to B on the dying of A before twenty-one, shows an intention, that if A attains the age of twenty-one, he shall have a fee, and he takes it by implication." [4 Com. (14 Ed.), *541.]

Washburn says: "A fee may be given, by implication, when the estate bears such a relation to some other estate as to render such a construction a reasonable one; as where the devise was to one 'after the death of the testator's wife,' it was

held to be a remainder in fee to him, and an estate for life, by implication, to the wife; so, where the devise was to A, if B died before he was twenty-one years of age: the estate to B was held to be a fee by implication if he attained the age of twenty-one years." [3 Washburn (5 Ed.), 694-5.]

And in order that a life estate only should pass to a certain devisee, it is by no means necessary that the precise technical term usually employed for that purpose, should be used; any equivalent form of expression which clearly indicates an intention to pass but a life estate will accomplish the same object and effectuate the non-technical expressed. intention, which intention may be gathered from the four corners of the instrument. [Schorr v. Carter, 120 Mo. 409, and cases cited; McMillan v. Farrow, 141 Mo. 55, and cases cited; Cross v. Hock, 50 S. W. 786; Walton v. Dumtra, 54 S. W. 237, and cases cited.]

Section 8837, Revised Statutes 1889, declares that: "Where a remainder in lands or tenements, goods or chattels, shall be limited, by deed or otherwise, to take effect on the death of any person without heirs or heirs of his body, or without issue, or on failure of issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor."

It has been ruled by this court that this section was evidently enacted to prevent the words "*die without issue,*" from being so construed as to mean an "*indefinite failure of issue,*" as by some of the authorities the former words were construed to mean; that the words "*dying without issue*" in that section are to be construed to mean dying without issue living at the death of the person named as ancestor, or first taker; that the term "*ancestor*" as used in that section is the devisee of the life estate, whose issue, if any, are to take the remainder in fee; and that in case of failure of such issue, those who are to take

the remainder over in fee, are *executory devisees*.    [Naylor v.
Godman, 109 Mo. 543, and cases cited.]

Under the foregoing authorities and statutory provisions,
it is clear, first, that William Franklin Yocum took but a life
estate; second, his prospective children, a contingent 're-
mainder; third, the devises to Susan Evans and others, were
executory devises; and fourth, under the ruling in Daniel v.
Whartenby, supra, upon the birth of the first child to William
Franklin Yocum, the contingent remainder became a vested
remainder in such child, but opened and let in the after-born
children, and owing to the birth of such issue, the entire estate
was disposed of, and left nothing for the executory devisees,
but such children would of course, be postponed in the enjoy-
ment of the fee simple vested in them until the termination
of their father's life estate.

Under these views, William Franklin Yocum had nothing
he could convey but his life estate, and his children not deriv-
ing their title from him, but from their grandfather, were not
bound by his warranty.

For these reasons, the judgment should be reversed and
the cause remanded, with directions to enter judgment for
plaintiffs.    *Marshall, J.*, concurs in this opinion.

MARSHALL, .J. (*dissenting.*)—The question in this
case is what estate vested in William Franklin Yocum, by the
fifth clause of the will of his father.  If a fee simple absolute,
then the defendants have title, acquired by mesne conveyances
from William Franklin Yocum during his lifetime.  If less
than a fee simple absolute, then the plaintiffs have title, as the
"legal issue—descendants"—"legitimate issue" of William
Franklin Yocum, who were living at the date of the death of
their said father.

The said fifth clause of the will of the testator, is as fol-
lows:  "To my beloved son William Franklin Yocum (my
natural son) I bequeath absolutely the northwest quarter of

section 7 of township 53, range 35, the place I now reside on in Platte county, Missouri, subject forever to the reservation for my burial place made in clause two of this will; and further, with this express understanding and restriction, namely, that if my said son dies without legal issue, descendants of his, legitimate issue of his, said lands shall pass to" certain neices, nephews and sisters of the testator.

It is conceded by all that the statute then and now in force requires "all courts and others concerned in the execution of last wills to have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them." [R. S. 1845, sec. 51, p. 1086; R. S. 1889, sec. 8916.] It is further conceded by all that the terms "legal issue," "descendants of his," "legitimate issue of his," mean his heirs living at the date of the death of the first taker, William Franklin Yocum, and that there were such issue living at that time.

It is also conceded by all that estates-tail are abolished in Missouri, and estates such as would have been estates-tail in England are simply estates for life in the first taker, with fee simple estates in the remaindermen under the statutes of descent in Missouri.

It is also conceded that under the rule in Shelly's case where an estate was devised or granted to A and his heirs or to the heirs of his body, the heirs took by virtue of the limitation over in the will or deed, but that in such case now, in Missouri, since the abolition of the rule in Shelley's case, the heirs in such a case take as purchasers and not by limitation. But as the question now before the court is not whether the heirs take by limitation or purchase, but whether it was the intention of the testator that they should have any estate in the land whatever that their father could not cut out by deed or will, this distinction between the character of the estate the heirs took, if any, is not essentially involved in this case. The first inquiry is

what estate did their father acquire under this will? If absolute, the heirs are cut out by his deed; if less than absolute, the father could not cut them out by any act of his.

The intention of the testator must govern. No precise technical words are necessary in a will to express intention. Neither must the ascertainment of the intention be·made to depend upon the prior or subsequent collocation of the clause of the will to be construed. "It is to be construed according to the *intention,* as gathered from the whole instruments." [2 Minor's Inst., p. 228.]

Stripped of technical phraseology and with the reservation clause as to the burial place laid out of consideration, this clause would read: "To my beloved son William Franklin Yocum (my natural son) I bequeath absolutely" the land, "with this express understanding and reservation, namely, that if my said son dies without legal issue, descendants of his, legitimate issue of·his, said lands shall pass to" my nephews and neices and sisters, share and share alike.

Read in this way, the first fact that is disclosed is that William Franklin Yocum was his *natural* son, but not his son begotten in lawful wedlock. As a natural son he could not inherit from the testator. So a will was necessary to give him the land. The next fact disclosed is that he was a beloved son for whom the testator wanted to provide. How provide? To give him the land absolutely, so he could dispose of it absolutely or do with it as he pleased? Manifestly not, for if such had been·the testator's intention he would have stopped when he said, "I bequeath absolutely." This would have accomplished all the testator wanted, if such was his intention. But he did not stop with the words, "I bequeath absolutely." On the contrary he added, "with this express understanding and restriction, namely, that if my said son died without legal issue, descendants of his, legitimate issue of his, said land shall pass to" my neices, nephews and sisters. Here is an "express

qualification and restriction" on the devise, limiting, modifying and qualifying the words "bequeath absolutely," and at any rate making the "absolute" estate less than absolute; putting it beyond the power of the devisee to do with the estate as he saw fit. This made it possible then, by express, plain words, as strong as the words of devise to him, for the absolute fee simple estate to be cut down to a lesser estate. What estate did the testator thereby intend to give to his natural son? Not a fee simple absolute, it is too plain for dispute. For, if the son died without legal issue, the estate would pass under the will from the testator to his nieces, nephews and sisters. They would take, therefore, a contingent remainder. That is, it would be contingent so long as the son lived, for he might have legitimate issue born to him at any time during his life, aye, and if born within ten months and twenty-one years after his death. Until the expiration of such time, therefore, the estate, limited to the nieces would be contingent. Upon the happening of such contingency, the estate limited to the nieces, etc., would cease. But upon the failure of such contingency the nieces, etc., would take a vested fee simple. In the meantime, what estate would the son have? A fee simple absolute? Clearly not, for a contingent remainder in fee can not be limited upon a prior fee in possession. Yet as shown it might not be known until ten months and twenty-one years after the son's death whether the contingent remainder would ripen into a fee simple absolute in the nieces, etc., or be cut out entirely. A contingent remainder must have a precedent particular estate to rest upon. Such precedent particular estate must be an estate less than a fee. So it might have been that during all the lifetime of the son and until after the expiration of ten months and twenty-one years after his death, it could not be known whether the contingent remainder would take effect. During that time the son would have clearly had a life estate only. Therefore, until after his death the fact

could never be made certain that the son had or would have anything but a life estate.

I don't understand that anyone disputes this proposition.

Can it be, then, that in the event the son died without legal issue, his estate was only a life estate, but that if he died leaving issue that life estate would be enlarged into a fee?

If so, it must be that the estate devised to the son is a *conditional fee*; that is, an estate of a freehold nature which will enlarge to a fee upon the happening of a condition precedent or subsequent, or upon the failure of such condition will remain an estate of a freehold nature during the life of the first taker, but will be less than a fee. 1 Blackstone (Chitty's), marg. p. 154, says: "An estate on condition expressed in the grant itself is where an estate is granted, either in fee simple or otherwise, with an express qualification annexed, whereby the estate granted shall either commence, be enlarged, or be defeated, upon the performance or breach of such qualification or condition. These conditions are, therefore, either precedent or subsequent." Then after citing various examples, the author continues (marg. p. 156): "In all these instances, of limitations or conditions subsequent, it is to be observed, that so long as the condition, either express or implied, either in deed or in law, remains unbroken, the grantee may have an estate of freehold, provided the estate upon which such condition is annexed be in itself of a freehold nature; as if the original grant express either an estate of inheritance, or for life; or no estate at all, which is constructively an estate for life. For, the breach of these conditions being contingent and uncertain, this uncertainty preserves the freehold; because the estate is capable to last forever, or at least for the life of the tenant, supposing the condition to remain unbroken."

In note 3 to chapter 10, p. 122, the author says: "A particular estate may be limited, with a condition, that, after the happening of a certain event, the person to whom the first estate

is limited shall have a larger estate.    Such a condition may
be good and effectual, as well in relation to things which lie in
grant, as to things which lie in livery, and may be annexed as
well to an estate-tail, which can not be drowned, as to an estate
for life or years, which may be merged by the access of a
greater estate.    But, such increase of an estate by force of such
a condition, ought to have four incidents :    (1) There must
be a particular estate as a foundation for the increase to take
effect upon; which particular estate, Lord COKE held, must not
be an estate at will, nor revocable nor contingent.    (2)
Such particular estate ought to continue in the lessee or grantee,
until the increase happens, or at least no alteration in privity
of estate must be made by alienation of the lessee or grantee;
though the alienation of the lessor or grantor will not affect
the condition; and the alteration of persons by descent of the
reversion to the heirs of the grantor, or his alienee, or the
particular estate to the representatives of the grantee, will not
avoid the condition.    Neither need such increase take place
immediately upon the particular estate, but may enure as a
remainder to the donee of the particular estate, or his repre-
sentatives, subsequent to an intermediate remainder to some-
body else.    (3) The increase must vest and take effect im-
mediately upon the performance of the condition; for, if an
estate can not be enlarged at the very instant appointed for its
enlargement, the enlargement shall never take place.    (4)
The particular estate and the increase ought to derive their
effect from one and the same instrument, or from several deeds
delivered at one and the same time.    [Lord Stafford's case, 8
Rep. 149-153.]"

Test this devise to the son by this rule.    Can it be fairly
said that the testator intended to give his son an estate in the
nature of a freehold, but less than a fee if he had no children,
but that if he had children then such lesser estate was to be
enlarged into a fee?    If so, why then did he stand out by

saying "I bequeath absolutely?" · If this had been his inten-
tion would he not have bequeathed the land to him for life,
or without specifying any term, which would have been an
estate for life by implication under the circumstances, to be
enlarged to a fee upon condition that he had children born
during his life? This would have made it possible for the
condition subsequent to become effective, certain and useful
to the son during his life, and would not have left it uncertain
until after he had been dead ten months and twenty-one years,
whether he was to have children or whether they would be living
at the date of his death. Or limiting it to children, legitimate
children or not, living at the death of the son, it would not
have left it uncertain all the whole life of the son whether he
had still only the original lesser estate or an estate enlarged
into a fee.

There are no apt words employed in the will creating such
a conditional fee. Nor are the words used fairly susceptible
of such a construction.

These considerations plainly show that the testator did not
intend to create a conditional fee in his son; did not attempt to
vest in him a lesser estate to be enlarged into a fee upon the
happening of a condition subsequent.

What, then, was the true and real intention of the tes-
tator? The *dominant* idea expressed and running through
every word and phrase of the will is to keep the land in the
testator's family as long as the law gave him the right to do so.
This is clear first, from the absolute bequest to the son; second,
fearing it might get out of his family if the son had no legiti-
mate issue capable of inheriting, he created the contingent
remainder to his nieces, nephews, and sisters. And he could
go no further with his limitations. The testator evidently
intended that the son should enjoy the property during his life,
and if he had children living at his death, they should have the
fee, but if he had no such children, the fee should go to his

nearest of kin, his nieces, nephews and sisters. He did not think it was necessary, or did not know how, to express his intention in this plain and unequivocal way. If he had he would have done so. But as this was his intention it is the duty of the courts to enforce it, even if he was not as apt in expressing that intention as he might have been.

So construed, effect is given to every word, phrase and part of the will. Nothing is cut down. Nothing is enlarged. Nothing destroyed. No stumbling blocks of construction are encountered. Every beneficiary gets all the testator intended and at the time and in the manner intended by him. Any other construction necessarily defeats a part of the will, and, *pro tanto*, fails to carry out the intention of the testator. Between the two constructions there should be no halting or hesitancy. One is plain and common sense. The other technical, refined, and destructive of the wishes of the testator.

For these reasons, I think, William Franklin Yocum, took a life estate under his father's will. The children—legal issue—descendants of his, legitimate issue of his, took the fee under the will from the testator at the death of the life tenant, and the contingent remainder to the nieces, nephews and sisters of the testator failed because the contingency upon which they were to have the fee never occurred.

The deed from William Franklin Yocum, to the defendant's grantors, therefore, conveyed only a life estate, which terminated with the life of the grantor. Thereupon for the first time the children, the plaintiffs, became entitled to the fee.

In my opinion the judgment of the circuit court was for the wrong party, and should be reversed.